Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| WEEDCO INC.<br><br>APELANTE<br><br>V.<br><br>LOGIC ENERGY PR, LLC<br>MARIS GROUP<br>PEDRO ORTIZ<br><br>APELADOS | TA2025AP00633 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm. SJ2023CV01890<br><br>Sobre: Incumplimiento de contrato; interferencia torticera; daños y perjuicios |

Panel integrado por su presidenta, la Juez Lebrón Nieves, el Juez, Pagán Ocasio y la Jueza Álvarez Esnard.

Pagán Ocasio, juez ponente

## SENTENCIA

En San Juan, Puerto Rico, a 13 de marzo de 2026.

### I.

El 4 de diciembre de 2025, Weedco Inc. (Weedco o parte apelante) presentó una *Apelación* en la que nos solicitó que revoquemos la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI o foro primario), el 22 de septiembre de 2025, notificada y archivada digitalmente en autos el 24 de septiembre de 2025.[1] Mediante dicho dictamen, el TPI declaró No Ha Lugar la *Demanda* y también la *Reconvención*. No obstante, determinó que Weedco actuó con temeridad por lo que le impuso el pago de honorarios de abogado a favor de Maris Group, LLC (Maris).

---

[1] Véase entrada núm. 94 del expediente digital del caso en el Sistema Unificado de Manejo y Administración de Casos del Tribunal de Primera Instancia (SUMAC-TPI).

El 8 de diciembre de 2025, emitimos una *Resolución* en la que le concedimos a la parte apelada hasta el 7 de enero de 2026 para presentar su alegato en oposición.[2]

El 24 de diciembre de 2025, Maris y el señor Pedro Ortiz (en conjunto, parte apelada) presentaron una *Oposición a Apelación* en la cual solicitaron que confirmemos la *Sentencia* apelada.[3]

Con el beneficio de la comparecencia de las partes, damos por perfeccionado el recurso y pormenorizamos los hechos procesales más relevantes para su atención.

**II.**

El caso de marras tuvo su génesis el 1 de marzo de 2023, cuando Weedco presentó una *Demanda* sobre incumplimiento de contrato, interferencia torticera con relaciones contractuales y daños y perjuicios en contra de Logic Energy PR, LLC (LEPR), Maris y el señor Ortiz.[4] En síntesis, alegó que entre Weedco y LEPR formalizaron un contrato denominado "Energy Services Agreement" (ESA) mediante el cual LEPR se obligó a diseñar, construir, financiar, operar y mantener un "Conveyance System" o una cogeneradora. Dicho sistema sería ubicado en los predios de Weedco, el cual le produciría y supliría electricidad a sus facilidades. Mediante dicho contrato, acordaron que Weedco pagaría por la electricidad suplida, a un mínimo de 233,333 kvh mensuales a $0.165 el kvh.

Según alegó, el señor Ortiz fue una de las personas que negoció el ESA en representación de LEPR. La instalación de la cogeneradora en las facilidades de Weedco culminó en abril de 2022. No obstante, arguyó que la cogeneradora nunca ha producido o suplido electricidad. Mencionó que, en agosto de 2022, el señor Ortiz

---

[2] Véase entrada núm. 2 del expediente digital del caso en el Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC-TA).
[3] Íd., entrada núm. 3.
[4] Véase entrada núm. 1 del expediente del caso en el SUMAC-TPI.

se comunicó para informarle que fue quien financió la cogeneradora, que tiene interés en ella y quería retirarla de los predios de Weedco. Asimismo, Weedco indicó que recibió una carta fechada el 15 de agosto de 2022 en la que LEPR le notificó que cedió o renunció voluntariamente al "Conveyance System" a favor de Maris y que Maris era el propietario legal de la cogeneradora.

Así las cosas, Weedco argumentó que, según el ESA, el "Conveyance System" tiene que ser propiedad de LEPR y no puede ser transferido sin el consentimiento por escrito de Weedco, lo cual la parte apelante no ha otorgado. Por lo que, adujo que, dicha transferencia de titularidad viola los términos y condiciones del ESA. Expuso que, el 21 de noviembre de 2022, Weedco le envió una carta a LEPR para iniciar esfuerzos de mediación de conformidad con el ESA, pero que LEPR no respondió. Previamente, de acuerdo a lo requerido en el contrato, solicitó comenzar con el proceso de conciliación, pero tampoco fue contestada su misiva.

La parte apelante sostuvo que, LEPR incumplió con varias de sus obligaciones principales bajo el ESA por lo que solicitó que se ordene el cumplimiento específico del acuerdo y el resarcimiento en daños provocados por dicho incumplimiento, por una suma no menor de $510,943.45, según estimados. Además, alegó que el señor Ortiz y/o Maris interfirieron ilegal y culposamente con la relación contractual entre Weedco y LEPR, al evitar que LEPR cumpla con sus obligaciones bajo el ESA, provocándole daños a la parte apelante.

El 24 de abril de 2023, Weedco presentó una *Moción solicitando anotación de rebeldía.*[5] Mediante esta, informó el diligenciamiento personal de los emplazamientos de LEPR y de Maris y el emplazamiento al señor Ortiz por edicto. Indicó que, el

---

[5] Íd., entrada núm. 20.

señor Ortiz y Maris habían presentado solicitud de prórroga para presentar su alegación responsiva. No obstante, expuso que, LEPR no había presentado alegación responsiva dentro del término establecido para hacerlo por lo que solicitó respecto a dicha parte la anotación de rebeldía.

Posteriormente, el 1 de mayo de 2023, Maris y el señor Ortiz presentaron una *Contestación a Demanda, Reconvención y Cobro de Dinero*.[6] En resumen, negaron la mayoría de las alegaciones y, en particular, negaron que el señor Ortiz haya hecho negocios con o por LEPR, sino que LEPR había sido representado por el señor Frank Veliz. Por su parte, alegaron afirmativamente que no existe contrato formalizado entre Weedco y LEPR. Aceptaron que, el equipo está instalado en las facilidades de Weedco. Sin embargo, sostuvieron que el ESA no fue firmado por todas las partes, lo cual hace sus cláusulas inoperantes e inexistentes.

La parte apelada arguyó que Maris pagó a LEPR por la cogeneradora y se convirtió en el acreedor. Así, adujo que, Weedco le adeuda a Maris el equipo y que, al no existir contrato válido entre Weedco y LEPR, no tiene que existir ningún consentimiento escrito por parte de Weedco para hacer cualquier gestión sobre el equipo. Por último, negó haber intervenido en la relación contractual habida entre Weedco y LEPR. En específico, negó que el señor Ortiz conociera de los términos y condiciones del ESA. Empero, adujo que Weedco incurre en un enriquecimiento injusto al pretender quedarse con la cogeneradora sin justo título ni buena fe.

Respecto a la reconvención, Maris, particularmente, alegó que, Weedco les adeuda la cantidad de $611,000.00 por el equipo y trasportación del mismo, más la suma de $50,000.00 por su acondicionamiento. Arguyó que, ha sufrido la pérdida de ingresos

---

[6] Íd., entrada núm. 21.

ya que Weedco ha incumplido con pagarle la suma mensual de $25,458.33 que debía pagarle desde el 1 de noviembre de 2019.

El 2 de mayo de 2023, a solicitud de la parte apelante, el TPI le anotó la rebeldía a LEPR.[7]

El 11 de mayo de 2023, Weedco presentó una *Contestación a Reconvención y Cobro de Dinero*.[8] En resumen, negó adeudarle suma alguna a Maris, dado que no tienen relación contractual. Arguyó que, Maris pagó a LEPR una suma de dinero por el equipo, con conocimiento del contrato entre Weedco y LEPR por lo que, en este caso, Maris interfirió torticeramente con la relación contractual habida entre Weedco y LEPR. Por su parte, Weedco alegó afirmativamente que tiene la posesión de la cogeneradora debido a que LEPR la instaló en sus facilidades, de acuerdo con el contrato entre dichas partes. Por lo cual, adujo que tiene la posesión del equipo de buena fe. Asimismo, alegó que Weedco y LEPR formalizaron un contrato válido y, dado que se le anotó la rebeldía a LEPR, se deben entender por admitidas las alegaciones afirmativas que la parte apelante hizo con relación a LEPR.  Por lo cual, arguyó que Maris no tiene legitimación activa para cuestionar la validez del contrato habido entre Weedco y LEPR.

Tras varios trámites procesales, el 9 de junio de 2023, Weedco presentó una *Solicitud de Sentencia Parcial en Rebeldía.*[9] Señaló que, LEPR fue debidamente emplazada y no compareció al pleito por lo que, conforme a la Regla 45.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 45.1, procede que se den por admitidas las aseveraciones hechas en las alegaciones afirmativas de la *Demanda.* Arguyó que, dado la anotación de rebeldía a LEPR, procede dictar sentencia parcial en rebeldía en contra de LEPR determinado que este

---

[7] Íd., entrada núm. 23.
[8] Íd., entrada núm. 26.
[9] Íd., entrada núm. 31.

incumplió con los términos y condiciones del contrato habido con Weedco. Adujo que las alegaciones, tomadas como ciertas, demuestran que entre Weedco y LEPR se formalizó una relación contractual mediante la cual LEPR asumió ciertas obligaciones que luego incumplió, a saber: (i) el equipo que instaló nunca produjo ni suplió energía a las facilidades de Weedco y (ii) que transfirió la titularidad del equipo a Maris sin el consentimiento escrito de Weedco.

El 16 de junio de 2023, Maris y el señor Ortiz presentaron una *Oposición a Solicitud de Sentencia Sumaria Parcial en Rebeldía.*[10] En resumen, reiteraron su alegación de que entre Weedco y LEPR no se formalizó un contrato dado que el mismo no fue firmado por lo que, a su juicio, este no cumple con el requisito de consentimiento. Por ello, adujeron que el remedio que Weedco solicita al amparo de la Regla 45 de Procedimiento Civil, *supra*, R. 45, no procede en derecho.

El 17 de julio de 2023, Weedco presentó una *Réplica a Oposición a Solicitud de Sentencia Sumaria Parcial en Rebeldía* en la que reiteró sus argumentos esbozados en la solicitud presentada previamente.[11]

El 4 de diciembre de 2023, el TPI emitió una *Resolución* en la que <u>mantuvo la anotación de rebeldía sobre LEPR</u>, sin embargo, <u>se abstuvo de dictar sentencia parcial antes de concluir la totalidad del caso para evitar afectar derechos de las demás partes</u>.[12]

Luego de múltiples trámites procesales, el 24 de mayo de 2024, la parte apelada presentó una *Moción solicitando se dicte Orden para que se entregue la cogeneradora de energía.*[13] Mediante esta, solicitó que se ordenara la entrega de la cogeneradora ubicada

---

[10] Íd., entrada núm. 33.
[11] Íd., entrada núm. 38.
[12] Íd., entrada núm. 48.
[13] Íd., entrada núm. 64.

en las facilidades de Weedco a Maris, de forma que la última pueda mitigar los daños sufridos. Alegó que de la *Demanda* no surge que Weedco sea titular de la cogeneradora que ubica en sus predios ni que haya hecho pago por ella. Adujo, además, que, el pleito de Weedco contra Maris y el señor Ortiz no justifica que Weedco retenga la cogeneradora por la que no pagó. Por último, manifestó que las actuaciones de Weedco aumentan y agravan los daños a la parte apelada.

El 3 de junio de 2024, Weedco presentó una *Oposición a Moción Solicitando se dicte Orden para que se entregue la cogeneradora de energía.*[14] Arguyó que la referida solicitud de orden solo expone argumentos generales y no menciona la base legal bajo la cual solicita la entrega de la cogeneradora. Por lo cual, sostuvo que, conceder dicha solicitud tornaría académica una de las principales causas de acción de la *Demanda.*

El 29 de agosto de 2024, el TPI emitió una *Resolución* en la que declaró No Ha Lugar la solicitud de orden presentada por Maris y el señor Ortiz por entender que no es un asunto susceptible de resolverse mediante alegaciones.[15]

El 31 de octubre de 2024, Weedco presentó una *Solicitud de Sentencia Sumaria Parcial.*[16] En resumen, sostuvo que los hechos sobre los cuales alega que no existe controversia demuestran, entre otras cosas, que: 1) LEPR negoció un acuerdo contractual con Weedco para instalar una cogeneradora de energía en las facilidades de Weedco para venderle energía a este último, 2) que el señor Ortiz participó de dichas negociaciones, 3) fue el señor Ortiz quien envió el acuerdo redactado por LEPR a Weedco, y 4) Weedco lo firmó. Adujo que, LEPR actuó de conformidad a los términos y condiciones

---

[14] Íd., entrada núm. 66.
[15] Íd., entrada núm. 70.
[16] Íd., entrada núm. 74.

del acuerdo firmado por Weedco e instaló la cogeneradora según allí establecido, no obstante, esta no ha producido energía. Además, señaló que, Maris alega ser titular de la cogeneradora, y solicita retirarla de las facilidades de Weedco, en virtud del contrato que realizó con Logic Energy USA (LEUSA). Por ello, arguyó que procede que se dicte sentencia sumaria parcial declarando ha lugar sus causas de acción de incumplimiento de contrato e interferencia torticera y, también, se desestime la reconvención.

Weedco argumentó que, en función de la anotación de rebeldía a LEPR, no existen asuntos litigiosos y en controversia entre Weedco y LEPR. Respecto a Maris y el señor Ortiz, esbozó los asuntos litigiosos por los cuales solicita que se dicte sentencia sumaria parcial.[17]

La parte apelante formuló cincuenta y seis (56) determinaciones de hechos materiales sobre los cuales alegó no existe controversia. En síntesis, alegó que LEPR incumplió con su obligación contractual de dos maneras, a saber: 1) instaló una cogeneradora que no ha suplido energía y 2) permitió, sin el previo consentimiento escrito de Weedco, que un tercero reclame ser dueño del equipo. Adujo que, por dichos incumplimientos ha sufrido daños, dado que no se ha podido beneficiar del ahorro en los costos de energía pues ha tenido que comprarla a la Autoridad de Energía Eléctrica o LUMA, a un precio mayor al pactado con LEPR.

Respecto a Maris y el señor Ortiz, aludió a que, al momento en que el señor Ortiz autorizó que Maris diera un préstamo a LEUSA, el señor Ortiz estaba consciente que Weedco y LEPR tenían un contrato firmado. Por lo cual, arguyó que, tanto LEPR, el señor Ortiz y Maris son solidariamente responsables por los daños causados a Weedco. De otra parte, manifestó que, Weedco no tiene relación

---

[17] Véase entrada núm. 74 del expediente del caso en SUMAC-TPI, *Solicitud de Sentencia Sumaria Parcial* presentada por Weedco, págs. 4-5.

contractual alguna con LEUSA, ni con Maris. Por tanto, sostuvo que es improcedente que se le condene a Weedco por el pago que LEUSA viene obligada a hacerle a Maris en función de un contrato de préstamo.

El 21 de noviembre de 2024, Maris y el señor Ortiz presentaron una *Moción de Sentencia Sumaria a tenor con la Regla 36.3 de Procedimiento Civil.*[18] En resumen, alegaron que Weedco no cuenta con evidencia para sostener sus alegaciones respecto a que Maris y/o el señor Ortiz incurrieron en interferencia torticera con relación al alegado contrato entre Weedco y LEPR.

La parte apelada sostuvo que el ESA no es válido porque no fue firmado por todas las partes. Por su parte, arguyó que Maris es quien tiene la titularidad, buena fe y justo título del equipo. Alegó que, Weedco pretende enriquecerse injustamente con la adquisición de un equipo por el cual no ha pagado y no le pertenece. Adujo, además, que Weedco no estableció mediante prueba la alegada culpa en que incurrió Maris y el señor Ortiz que impidió que el contrato entre Weedco y LEPR se completara. Asimismo, expresó que no le ocasionaron daños a Weedco y, por último, que no existe ninguna acción culposa.

En la misma fecha, Maris y el señor Ortiz presentaron una *Oposición a Solicitud de Sentencia Sumaria Parcial.*[19] En resumen, la parte apelada reconoció que el señor Ortiz conocía de la existencia de una relación contractual entre Weedco y LEPR, pero alegó que desconocía el estatus en que se encontraba el acuerdo. Empero, arguyó que no existe duda de que la cogeneradora le pertenece a Maris dado que Weedco propiamente afirmó que no pagó dinero por ella. Ahora bien, adujo que, si se determinara que el contrato entre Weedco y LEPR es válido, la cláusula que establece que la titularidad

---

[18] Íd., entrada núm. 79.
[19] Íd., entrada núm. 80.

de la cogeneradora no puede ser traspasada si Weedco no lo aprueba, al ser nula.

Sobre la causa de acción por alegada interferencia torticera en relaciones contractuales, reiteró que no se cumple con ninguno de los elementos de la causa de acción. Por lo cual, solicitó al TPI declarar No Ha Lugar la solicitud. Adujo que la causa de acción no procede como cuestión de hecho ni de derecho, sino que es frívola y temeraria.

El 5 de diciembre de 2024, Weedco presentó una *Réplica a Oposición a Solicitud de Sentencia Sumaria Parcial.*[20] Argumentó que, las declaraciones juradas suscritas por Ortiz y por el señor Frank Veliz para sostener sus alegaciones deben ser descartadas en virtud de la doctrina de *sham affidavit* dado que incluyen afirmaciones incompatibles con los testimonios que estos previamente ofrecieron en sus respectivas deposiciones. Además, mencionó que la parte apelada no controvirtió ninguno de los hechos establecidos por Weedco por lo cual resta aplicar el derecho.

Asimismo, el 16 de diciembre de 2024, Weedco presentó una *Oposición a Moción de Sentencia Sumaria a tenor con la Regla 36.3 de Procedimiento Civil.*[21] En resumen, reiteró su argumento sobre que las declaraciones juradas del señor Ortiz y del señor Veliz deben ser descartadas bajo la doctrina de *sham affidavit.* Por ello, solicitó al TPI declarar No Ha Lugar la moción de sentencia sumaria presentada por Maris y el señor Ortiz y que declare Ha Lugar la moción de sentencia sumaria parcial que este presentó.

El 22 de septiembre de 2025 y notificada el 24 de septiembre de 2025, el TPI emitió una *Sentencia* en la que declaró No Ha Lugar tanto la *Demanda* como la *Reconvención.*[22] No obstante, determinó

---

[20] Íd., entrada núm. 83.
[21] Íd., entrada núm. 84.
[22] Íd., entrada núm. 94.

que Weedco actuó con temeridad al retener la cogeneradora de la que no es dueño, por lo que le impuso el pago de honorarios a favor de Maris. El foro primario formuló las siguientes determinaciones de hechos:

1. Logic Energy PR, LLC. (LEPR) es una empresa que formaron en Puerto Rico los Sres. Frank Veliz, Carlos Torres, Christian Torres, Francisco González y Vicente Pérez con el propósito de vender energía.

2. LEPR se dedicaba a vender energía, no equipos.

3. Para poder proporcionar la energía negociaban con la empresa cliente y cuando llegaban a un acuerdo instalaban el sistema en el local del cliente para venderle energía

4. LEPR no hizo negocios fuera de Puerto Rico.

5. LEPR envió un contrato titulado "Energy Servicing Agreement" (ESA), a Weedco.

6. El ESA fue redactado por el Sr. Veliz y su abogado.

7. Maribel Mas es la representante autorizada de Weedco.

8. Maribel Mas, como representante de Weedco, firmó el ESA y lo devolvió a LEPR.

9. El ESA entraba en vigor el 20 de diciembre de 2019.

10. Luego que Weedco firmara el contrato LEUSA compró la cogeneradora a "2G Energy" y la vendió a LEPR.

11. Una vez LEPR recibió la planta, la llevó a las instalaciones de Weedco.

12. La única planta (cogeneradora) que instaló LEPR en Puerto Rico fue la que se instaló en Weedco.

13. Al recibir la planta, Weedco entendió que el equipo no tenía capacidad para atender sus necesidades.

14. Luego de firmado el contrato, las partes continuaron negociando los términos del contrato.

15. LEPR instaló la planta cogeneradora, no porque estuviera vendiendo la planta a Weedco, sino para poder vender energía a Weedco.

16. El ESA establece que Weedco se compromete a comprar una cantidad mínima de 233,334 Kw mensuales de electricidad.

17. El contrato establece la forma y manera en que Weedco puede adquirir la cogeneradora si le interesara.

18. El ESA establece que, a excepción de lo permitido o requerido por el propio contrato, ni LEPR ni algún sucesor puede transferir la cogeneradora o parte de ella sin el consentimiento escrito de Weedco.

19. El ESA firmado por Weedco establece que la cogeneradora de energía que LEPR instalaría en Weedco "shall consist of 1- 550KW generator that shall have the capacity to provide 4,300,00 kWh." Y describe la cogeneradora como "1-550kw Gas to Power System and LNG Fuel Station".

20. La cogeneradora de energía que LEPR instaló en las facilidades de Weedco es la misma cogeneradora que se describe en el ESA.

21. Una vez instalada la cogeneradora, Weedco requirió a LEPR por una planta capaz de generar más energía.

22. El Sr. Veliz contestó que para suplir la cantidad que Weedco le requería necesitaba pagar un mínimo mayor al estipulado.

23. Weedco se negó al pago requerido y hubo un tranque en las negociaciones entre ambos.

24. Al trancarse las negociaciones entre Weedco y LEPR, la planta no se puso a funcionar.

25. La cogeneradora de energía que LEPR instaló en las facilidades de Weedco no ha producido energía.

26. Logic Energy USA (LEUSA) es una empresa organizada en los Estados Unidos de Norteamérica por los Sres. Frank Veliz, Carlos Torres, Christian Torres, Francisco González y Vicente Pérez.

27. LEPR y LEUSA eran empresas diferentes con funciones diferentes.

28. LEUSA se dedicaba a vender equipos de generar energía.

29. LEUSA era el representante de "2G Energy" en Puerto Rico para equipos de generar energía.

30. LEUSA le vendió a LEPR la generadora que se instaló en Weedco.

31. Conforme al ESA, el dueño de la cogeneradora de energía ubicada en las facilidades de Weedco es LEPR, no LEUSA.

32. LEPR tenía diferentes inversionistas para financiar la operación.

33. Maris Group financió la compra del equipo que LEPR instaló en Weedco.

34. El 18 de febrero de 2022, LEPR y Maris Group suscribieron un documento titulado "Voluntary Surrender of Equipment", que indica que LEPR transfiere a Maris Group la titularidad sobre un equipo descrito como AVUS 500plus G2P 2G, que está en Weedco, Calle B, Zona Industrial, Mayagüez, Puerto Rico.

35. El Sr. Veliz entiende que ese documento lo suscribe LEUSA pues surge del documento que la dirección es en Florida, EEUU.

36. El 15 de agosto de 2022, el Sr. Veliz le informó a Weedco que se había realizado el traspaso.

37. La razón para el traspaso es que LEPR no pu[s]o pagar a Maris Group el equipo que financió.

38. Pedro Ortiz es el presidente y propietario de Maris Group, LLC.

39. Maris Group y Pedro Ortiz no han tenido relación contractual o de negocios con LEPR.

40. El Sr. Pedro Ortiz no tuvo que ver con el desarrollo de los negocios de LEPR.

41. El Sr. Ortiz, a través de Maris Group, fue inversionista en el proyecto mediante el cual LEPR instaló una cogeneradora de energía en las facilidades de Weedco.

42. Maris Group, LLC. fue quien único pagó por la cogeneradora.

43. Weedco, Inc. no ha realizado ningún pago por la cogeneradora.

44. Weedco, Inc. retiene la cogeneradora sin que tenga la titularidad de la misma.

El foro primario determinó que entre Weedco y LEPR se perfeccionó un contrato. Concluyó que, los actos afirmativos de LEPR demuestran que aceptó los términos del contrato y que para el mismo hubo consentimiento, objeto y causa. Ahora bien, aludió a que, una vez instalada la cogeneradora, Weedco requirió de otros términos en el contrato toda vez que solicitó mayor capacidad de energía, a lo que LEPR le estableció un precio mayor de venta. El TPI resolvió que, ambas partes incumplieron el contrato ESA, toda vez que Weedco no estuvo dispuesto a pagar el precio por una capacidad mayor de energía ni ambas partes regresaron a los términos originalmente pactados. Aludió a que, el equipo nunca se puso a funcionar porque ambas partes interesaban modificar el contrato y no lograron un acuerdo.

Además, determinó que, al momento en que Maris reclamó la cogeneradora, el propósito para el cual se firmó el ESA, a saber, la

venta de energía, nunca se realizó. Esto, a pesar de que existe una cláusula en el contrato que establece que LEPR necesita la firma de Weedco para transferirla. Asimismo, determinó que Weedco venía obligado por el contrato a un pago mínimo de kilovatios, independientemente de si los utilizara o no, pago que nunca realizó.

De otra parte, concluyó que, no surgía de la evidencia presentada que Maris hubiera interferido intencional o maliciosamente en el contrato entre Weedco y LEPR. Ahora bien, determinó que, si bien la máquina pertenece a Maris, Weedco no viene obligado a pagar por ella, por no ser quien contrató con Maris. Sin embargo, resolvió que Weedco actuó temerariamente al retener la máquina sin justo título y sin pagar por ella.

Oportunamente, el 7 de octubre de 2025, Weedco presentó una *Solicitud de Determinaciones de Hechos Incontrovertidos Adicionales y Moción de Reconsideración.*[23] En esta, señaló una serie de hechos que fueron propuestos como incontrovertidos en su solicitud de sentencia sumaria parcial y que no fueron controvertidos por la otra parte ni acogidos por el TPI. Asimismo, solicitó que se eliminaran una serie de hechos formulados en la sentencia que, a su juicio están, en controversia. Además, solicitó la reconsideración de la sentencia recurrida.

Por su parte, el 17 de octubre de 2025, Maris y el señor Ortiz presentaron una *Oposición a "Solicitud de Determinaciones de Hechos Incontrovertidos Adicionales y Moción de Reconsideración"* en la que solicitaron que se deniegue la solicitud de Weedco.[24]

El 9 de noviembre de 2025 y notificada el 10 de noviembre de 2025, el TPI emitió una *Resolución* en la que declaró No Ha Lugar la

---

[23] Íd., entrada núm. 96.
[24] Íd., entrada núm. 97.

solicitud de reconsideración y determinaciones de hecho adicionales presentada por Weedco.[25]

Inconforme, Weedco presentó el recurso de apelación de epígrafe en el que formuló los siguientes señalamientos de error:

A. ERRÓ EL TPI AL NO EMITIR SENTENCIA EN REBELDÍA EN CUANTO A LOGIC ENERGY PR, LLC.

B. ERRÓ EL TPI AL DENEGAR Y DESESTIMAR LA DEMANDA EN CUANTO A LOGIC ENERGY PR, LLC, QUIEN ESTÁ EN REBELDÍA.

C. ERRÓ EL TPI AL EMITIR UNA SENTENCIA SUMARIA DESCARTANDO HECHOS INCONTROVERTIDOS Y/O INCLUYENDO DETERMINACIONES CONTRARIAS A HECHOS INCONTROVERTIDOS.

D. ERRÓ EL TPI AL DESESTIMAR LA RECLAMACIÓN DE INTERFERENCIA CONTRACTUAL TORTICERA EN CUANTO A MARIS GROUP[,] LLC Y PEDRO ORTIZ.

E. ERRÓ EL TPI AL DESESTIMAR LA RECONVENCIÓN Y COBRO DE DINERO DE MARIS GROUP[,] LLC Y PEDRO ORTIZ SIN PERJUICIO, PUES DEBIÓ HABER SIDO CON PERJUICIO.

F. ERRÓ EL TPI AL DETERMINAR QUE WEEDCO INC. ACTUÓ CON TEMERIDAD AL RETENER LA COGENERADORA DURANTE ESTE CASO.

Alegó que el foro primario levantó defensas a las que LEPR renunció por estar en rebeldía. Arguyó que correspondía al TPI concluir que LEPR incumplió con sus obligaciones contractuales que asumió hacia Weedco, dictando sentencia en rebeldía, toda vez que con la anotación de rebeldía se entienden por admitidos todos los hechos correctamente alegados en su contra. Por lo cual, arguyó que la determinación del TPI de declarar No Ha Lugar la acción de incumplimiento de contrato en contra de una parte en rebeldía es contraria a los hechos incontrovertidos y a derecho.

Además, adujo que, no existe prueba que sostenga la determinación de que Weedco incumplió sus obligaciones contractuales al no haber hecho pago alguno y que dicha

---

[25] Íd., entrada núm. 98.

determinación es contraria a los hechos establecidos como incontrovertidos. En particular, aludió a que, el señor Veliz admitió en su testimonio bajo juramento que, en la medida en que la cogeneradora no ha producido energía, Weedco no ha tenido obligación de pagarle a LEPR. Asimismo, alegó que, contrario a lo determinado por el TPI, los hechos incontrovertidos revelan que la relación contractual de Maris fue con LEUSA, no con LEPR. Por ello, expresó que los hechos incontrovertidos demuestran que LEUSA no pudo haber transferido la titularidad a Maris de una cogeneradora que era de LEPR.

De otra parte, arguyó que erró el TPI al declarar No Ha Lugar la causa de acción de interferencia torticera en relaciones contractuales, dado que, a su juicio, se cumplen los requisitos. Asimismo, manifestó que erró el TPI al desestimar la reconvención sin perjuicio, toda vez que la adjudicó en los méritos.

Por último, argumentó que la determinación del TPI de que actuó con temeridad por haber retenido la cogeneradora es contraria a derecho. Manifestó que, Weedco actuó en todo momento conforme a lo que entiende son sus derechos y que, inclusive, prevaleció en cuanto a que se perfeccionó un contrato con LEPR y que la reconvención de Maris fue desestimada. Por todo lo anterior, solicitó que se declare Ha Lugar la solicitud de sentencia sumaria parcial y se desestime con perjuicio la reconvención.

Por su parte, el 24 de diciembre de 2025, la parte apelada presentó una *Oposición a Apelación* en la que suplicó que confirmemos la determinación recurrida. En resumen, arguyó que Weedco pretende adueñarse de la cogeneradora sin base legal, justo título ni buena fe, aprovechándose simplemente de que a LEPR se le anotó la rebeldía. Adujo que, Weedco no ha presentado ningún documento que sostenga la alegada intervención por la parte

apelada, tendente a probar que dicha parte interfiriera en que el contrato entre Weedco y LEPR se completara.

También, la parte apelada arguyó que no trabajó en la preparación del contrato por lo que no interfirió con el mismo ni son parte contratante. Esta señaló que la participación de Maris fue dirigida a financiar la cogeneradora para lograr que se diera la relación comercial entre Weedco y LEPR. Por ello, manifestó que la causa de acción de Weedco contra la parte apelada no procede como cuestión de hecho ni de derecho. Asimismo, sostuvo que Weedco actuó con temeridad al retener la cogeneradora sobre la cual no tenía ningún derecho.

En adelante, consignamos el derecho aplicable.

**III.**

**A.**

La Regla 36 de Procedimiento Civil, *supra*, R. 36, regula todo lo concerniente a la moción de sentencia sumaria. Dicho mecanismo procesal se utiliza en aquellos litigios en los que no existen controversias genuinas de hechos materiales y, por consiguiente, no resulta necesaria la celebración de un juicio en su fondo, en la medida en que solo resta por dilucidar determinadas controversias de derecho. *Negrón Castro v. Soler Bernardini*, 2025 TSPR 96, 216 DPR ___ (2025); *BPPR v. Zorrilla y otro*, 214 DPR 329, 338 (2024). Su propósito principal es la solución justa, rápida y económica de los litigios civiles. *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310, 334-335 (2021).

El promovente podrá solicitar al tribunal que se dicte sentencia sumaria a su favor, ya sea sobre la totalidad o cualquier parte de la reclamación solicitada. Reglas 36.1 y 36.2 de Procedimiento Civil, *supra*, R. 36.1 y R. 36.2. La moción de sentencia sumaria debe contener: una exposición breve de las alegaciones de las partes, los asuntos litigiosos en controversia, la

causa de acción sobre la cual se solicita la sentencia sumaria, una relación concisa y organizada en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia, con indicación de los párrafos o páginas de la prueba documental donde se establecen los mismos, la argumentación del derecho aplicable y el remedio que se solicita. Regla 36.3 (a) de Procedimiento Civil, *supra*, R. 36.3(a).

El promovente de una sentencia sumaria deberá establecer, mediante declaraciones juradas o con prueba admisible en evidencia, que no existe controversia real respecto a hechos materiales de la controversia. Regla 36.1 de Procedimiento Civil, *supra*; ***Meléndez González et al. v. M. Cuebas***, 193 DPR 100, 110 (2015).

De igual forma, la parte que se opone a la sentencia sumaria tiene que cumplir con las exigencias de la Regla 36. En particular, debe enumerar aquellos hechos materiales de buena fe controvertidos y aquellos sobre los cuales no hay controversia. Regla 36.3 (b) de Procedimiento Civil, *supra*, R. 36.3(b). En ambos casos, por cada hecho, se tienen que indicar los párrafos o páginas de la prueba documental que establecen o impugnan ese hecho. Íd.

Para prevalecer en una moción de sentencia sumaria, su promovente tiene que establecer su derecho con claridad y debe demostrar que no existe controversia en cuanto a ningún hecho material, o sea, ningún elemento de la causa de acción. ***Meléndez González et al. v. M. Cuebas***, *supra*, pág. 110. Por hechos materiales se entienden aquellos que pueden afectar el resultado de una reclamación de acuerdo con el derecho sustantivo. ***Ramos Pérez v. Univisión***, 178 DPR 200, 213 (2010).

Nuestro máximo foro ha establecido que no es aconsejable dictar una sentencia sumaria cuando existe controversia sobre asuntos de credibilidad o que envuelvan aspectos subjetivos tales

como la intención, los propósitos mentales o la negligencia. ***Aponte Valentín v. Pfizer Pharmaceuticals***, *LLC*, 208 DPR 263, 278 (2021). Sin embargo, "nada impide que se utilice el mecanismo de sentencia sumaria en reclamaciones que requieran elementos subjetivos o de intención cuando surge de los documentos que se considerarán en la solicitud de sentencia sumaria la inexistencia de una controversia en torno a los hechos materiales". ***Cruz Cruz v. Casa Bella Corp***., 213 DPR 980, 993 (2024).

De otra parte, es norma de derecho reiterada y establecida que los foros revisores nos encontramos en la misma posición que el foro primario al evaluar la procedencia de una sentencia sumaria. ***Batista v. Sucn. Batista et al.***, 2025 TSPR 93, 216 DPR __ (2025); ***Cruz Cruz v. Casa Bella Corp***., supra, pág. 994. Sin embargo, los tribunales apelativos estamos limitados a: (1) considerar los documentos que se presentaron ante el foro de primera instancia; (2) determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y (3) comprobar si el derecho se aplicó de forma correcta. ***Birriel Colón v. Econo y otro***, 213 DPR 80, 91 (2023); ***Segarra Rivera v. Int'l. Shipping et al.***, 208 DPR 964, 981 (2022); ***Meléndez González et al. v. M. Cuebas***, *supra*, págs. 114–116. La revisión de los foros apelativos conlleva examinar de *novo* el expediente del caso de la manera más favorable hacia la parte que se opuso a la solicitud de sentencia sumaria en el foro primario. ***Birriel Colón v. Econo y otro***, supra, pág. 91.

**B.**

Nuestro ordenamiento jurídico reconoce la existencia de una causa de acción por interferencia torticera con una relación contractual. ***Gen. Office Prods. V. A.M. Capen's Sons***, 115 DPR 553 (1984).

Los elementos de dicha causa de acción son los siguientes: (1) la existencia de una relación contractual con la cual interfiera un

tercero; (2) debe mediar culpa, es decir, el tercero debe actuar intencionalmente, con conocimiento de la existencia del contrato y que, al interferir con este, se causaría perjuicio; (3) la existencia de un daño sufrido por el actor; y (4) un nexo causal entre el acto culposo del tercero y el incumplimiento del contrato. ***Jusino et als. v. Walgreens***, 155 DPR 560, 575-576 (2001).

Es impertinente a estos efectos que el cocontratante del perjudicado haya tenido la intención de incumplir el contrato. ***Gen. Office Prods. v. A. M. Capen's Sons***, supra, pág. 559. Basta con que el tercero haya provocado o contribuido a la inejecución. Íd. La responsabilidad del que interfiere con el contrato es solidaria con la responsabilidad del contratante que, a sabiendas, incumple con los términos de la obligación asumida. ***Dolphin Int'l of P.R. v. Ryder Truck Lines***, 127 DPR 869 (1991); ***Gen. Office Prods. v. A.M. Capen's Sons***, *supra*, pág. 559.

A tenor con lo antes expuesto, resulta medular la efectiva existencia de un contrato legal con el cual se interfiera de manera intencional y culposa. Siendo así, "[s]i lo que se afecta es una expectativa o una relación económica provechosa sin que medie contrato, la acción no procede, aunque es posible que se incurra en responsabilidad bajo otros supuestos jurídicos". ***Dolphin Int'l of P.R. v. Ryder Truck Lines***, *supra,* pág. 879.

**C.**

Como es conocido, las obligaciones nacen de la ley, los contratos, los cuasicontratos, los actos y omisiones ilícitos o en los que se actúe mediando culpa o negligencia. Artículo 1042 del Código Civil de 1930, 31 LPRA ant. sec. 2992, aplicable a los hechos de este caso por ser el vigente al momento en que se otorgó el contrato. Mediante el contrato, una persona se obliga a dar una prestación a otra. ***UIA v. Santander Securities y otros***, 214 DPR 601, 625 (2024). Aquellas obligaciones que nacen a raíz de un

contrato se consideran ley entre las partes, por lo que deben cumplirse a tenor de este. Artículo 1044 del Código Civil de 1930, *supra*, ant. sec. 2994. Los contratos quedan perfeccionados desde el mero consentimiento "y desde entonces obligan, no sólo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley". Artículo 1210 del Código Civil de 1930, *supra*, ant. sec. 3375.

Para que exista un contrato deben concurrir tres (3) elementos, estos son: (a) el consentimiento de los contratantes; (b) el objeto cierto que sea materia el contrato y (c) la causa de la obligación que se establezca. Artículo 1213 del Código Civil de 1930, *supra*, ant. sec. 3391. Por su parte, el consentimiento "se manifiesta por el concurso de la oferta y de la aceptación sobre la cosa y la causa que han de constituir el contrato". Artículo 1214 del Código Civil de 1930, *supra*, ant. sec. 3401.

En nuestro ordenamiento jurídico, se reconoce la declaración o manifestación tanto de un consentimiento expreso como de un consentimiento tácito. ***Aponte Valentín et al. v. Pfizer Pharm.***, 208 DPR 263, 286 (2021) (citando a J.R. Vélez Torres, <u>Curso de derecho civil: derecho de contratos</u>, Puerto Rico, Ed. Rev. Jur. UIPR, 1990, T.IV, Vol. II, pág. 20). Para el caso del consentimiento tácito, el elemento determinante "es la conducta de la persona y no las palabras que utilice para expresarlo." Íd. Es decir, la forma en que se desarrollen los hechos en cuestión debe revelar de manera inequívoca la voluntad de consentir. Íd.

Esto es así porque "[l]as obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes, y deben cumplirse al tenor de los mismos". Art. 1044 del Código Civil, *supra*, ant. sec. 2994; ***Rodríguez García v. UCA***, 200 DPR 929, 943 (2018).

Al interpretar un contrato, el análisis que se realice deber ser acorde al principio de la buena fe. ***S.L.G. Irizarry v. S.L.G. García***, 155 DPR 713, 727 (2001). Asimismo, para juzgar la intención de los contratantes, se deberán atender los "actos de éstos, coetáneos y posteriores al contrato." Artículo 1234 del Código Civil de Puerto Rico, *supra*, ant. sec. 3472.

Ahora bien, cuando el contrato es válido, pero uno de los contratantes que se obligó recíprocamente incumple con su parte del pacto, el perjudicado podrá reclamar el cumplimiento del contrato o la resolución de la obligación, con el resarcimiento de daños y abono de intereses en ambos casos. Artículo 1077 del Código Civil de 1930, *supra*, ant. sec. 3052. El incumplimiento de una obligación recíproca conlleva un efecto resolutorio siempre que la obligación incumplida sea una esencial o que su cumplimento constituya el motivo del contrato para la otra parte. ***NECA Mortg. Corp. v. A&W Dev. S.E.,*** 137 DPR 860, 875 (1995).

### D.

La rebeldía es aquella posición procesal en donde se coloca a la parte que ha dejado de ejercitar su derecho a defenderse o de cumplir con su deber procesal. ***Rivera Figueroa v. Joe's European Shop***, 183 DPR 580, 587 (2011), citando a R. Hernández Colón, *Derecho Procesal Civil*, 5ta ed., San Juan, Ed. LexisNexis, 2010, pág. 287. Es por ello por lo que el propósito del procedimiento de la anotación de rebeldía es desalentar la dilación como estrategia de litigio. Íd., citando a J.A. Cuevas Segarra, *Tratado de derecho procesal civil*, 2ª ed., San Juan, Pubs. J.T.S., 2011, T. IV, pág. 1340. Dicha sanción está reservada para aquellos casos en los cuales el demandado no ha cumplido con el requisito de comparecer a contestar una demanda, no ha presentado sus defensas en otra forma prescrita por ley o cuando una de las partes ha incumplido

con algún mandato del tribunal. ***Álamo Pérez v. Supermercados Grande, Inc.***, 158 DPR 93, 100 (2002).

A esos efectos, la anotación de rebeldía tiene como consecuencia jurídica que se den por admitidos los hechos correctamente alegados en la demanda y que el Tribunal de Primera Instancia pueda dictar sentencia, si procede como cuestión de derecho. ***González Pagán v. SLG Moret-Brunet,*** 202 DPR 1062, 1069 (2019); ***Rivera Figueroa v. Joe's European Shop***, supra, pág. 590; ***Álamo Pérez v. Supermercados Grande, Inc.,*** supra, pág. 101; ***Continental Ins. Co. v. Isleta Marina,*** 106 DPR 809, 815 (1978). Sin embargo, ello no garantiza que la parte promovente habrá de obtener un dictamen favorable dado que el trámite en rebeldía no priva al tribunal de evaluar si, en virtud de los hechos no controvertidos existe efectivamente una causa de acción que amerite la concesión de un remedio. ***Ocasio v. Kelly Servs. Inc.,*** 163 DPR 653, 671-672 (2005); ***Continental Ins. Co. v. Isleta Marina***, supra, pág. 817

**IV.**

A tenor con la normativa jurídica pormenorizada, nuestra revisión de la sentencia sumaria es de *novo*, aunque limitada a la prueba documental presentada ante el TPI. A su vez, debemos examinar el expediente de la manera más favorable a la parte que se opone a la solicitud de sentencia sumaria. Véase, ***Meléndez González, et al. v. M. Cuebas***, *supra*, pág. 118.

En este caso, las partes presentaron sendas solicitudes de sentencia sumaria tras entender que no existían controversias de hechos sustanciales y que, por consiguiente, únicamente correspondía aplicar el derecho y adjudicar el caso.

Tras un análisis objetivo, sereno y cuidadoso del expediente del caso, en correcta práctica adjudicativa apelativa, resolvemos que el TPI incidió, en parte, al emitir la *Sentencia* apelada. Los hechos

consignados en la *Sentencia Sumaria Parcial,* relacionados a la improcedencia de la reconvención, están apoyados en los documentos que obran en autos. No existe controversia sobre estos, por lo cual, los hacemos formar parte de la presente sentencia.

Ahora bien, colegimos que, el foro primario erró al declarar No Ha Lugar la *Demanda* respecto a LEPR, quien se encuentra en rebeldía, y renunció a levantar defensas afirmativas. Asimismo, concluimos que el foro primario incidió al imponerle a Weedco honorarios de abogado por temeridad a favor de Maris por retener la cogeneradora.

En el presente caso, Weedco alega que LEPR incumplió con el ESA dado que la cogeneradora no ha suplido energía y porque la titularidad de esta fue transferida a Maris, sin su consentimiento escrito. Además, alega que, Maris y el señor Ortiz interfirieron torticeramente en el acuerdo entre Weedco y LEPR.

Weedco solicitó, específicamente, la instalación de un "Conveyance System" que produzca y supla electricidad a las facilidades de Weedco y el resarcimiento en daños que el incumplimiento por parte de LEPR le ha provocado. Además, adujo que el señor Ortiz, presidente y único dueño de Maris, participó de las negociaciones del ESA en representación de LEPR por lo que tenía conocimiento de los términos y condiciones del contrato. Por ello, sostuvo que el señor Ortiz y/o Maris interfirieron ilegal y culposamente con la relación contractual entre Weedco y LEPR.

De otro lado, Maris y el señor Ortiz alegan que Weedco pretende apropiarse del equipo sin justo título y sin pagar por ella. Además, negaron haber interferido en la referida relación contractual entre Weedco y LEPR porque, según estos, no se formalizó contrato alguno entre dichas partes. Por lo que procede desestimar dicha reclamación.

Ante estos hechos, el foro primario declaró No Ha Lugar tanto la *Demanda* como la *Reconvención.* Cabe resaltar que, <u>a LEPR se le anotó la rebeldía</u> por transcurrir el término sin que hubiese presentado alegación responsiva.

El TPI determinó que, entre Weedco y LEPR se formalizó un contrato. No obstante, concluyó que, ambas partes incumplieron el mismo. En específico, entendió que, LEPR incumplió con el ESA al transferir la titularidad del equipo de la cogeneradora sin el consentimiento escrito de Weedco, según las propias cláusulas del contrato. De otra parte, determinó que Weedco incumplió al no hacer el pago mínimo, independientemente utilizara o no energía. Por eso, el TPI resolvió que, Weedco actuó temerariamente al retener una cogeneradora sin justo título, ni pagar por ella. Ello, a pesar de reconocer que, Weedco no contrató con Maris. También, concluyó que Maris ni el señor Ortiz interfirieron maliciosa o culposamente en el contrato entre Weedco y LEPR.

En esencia, mediante el recurso de epígrafe, como señalamientos de error, Weedco aduce que el foro primario erró al no dictar sentencia en contra de LEPR cuando éste último se encuentra en rebeldía. También, insiste en que el foro primario descartó hechos incontrovertidos y/o incluyó determinaciones contrarias a los hechos incontrovertidos. De otra parte, arguye que el TPI incidió al desestimar la causa de acción de interferencia torticera y de desestimar, sin perjuicio, la reconvención. Por último, Weedco sostiene que erró el TPI al determinar que este actuó con temeridad al retener la cogeneradora.

En cambio, la parte apelada sostiene que Weedco actúa con temeridad al retener la cogeneradora. Asimismo, alega que, el contrato entre Weedco y LEPR no le otorga título de propiedad sobre la misma, ni derecho para retenerla.

Respecto al primer y segundo señalamiento de error, conforme al derecho precedentemente pormenorizado, la Regla 45.1 de Procedimiento Civil, *supra*, establece que cuando una parte no contesta la demanda o no se defiende de ninguna otra forma contra las alegaciones y el remedio solicitado, se le anotará su rebeldía. La anotación de rebeldía implica que se tomen por ciertas todas las alegaciones sobre hechos correctamente alegados en la demanda o la alegación que se haya formulado en contra del rebelde. ***Banco Popular v. Andino Solís***, 192 DPR 172, 179 (2015).

En este caso, no está en controversia que la cogeneradora no ha producido energía a pesar de estar mecánicamente lista para funcionar. De la evidencia sometida en apoyo a la solitud de sentencia sumaria parcial de la parte apelante, surge claramente que, entre las partes de formalizó un contrato. Estos negociaron la instalación de un equipo de cogeneración de energía en las facilidades de Weedco y así se llevó a cabo. Aun cuando LEPR no firmó el documento, realizó actos afirmativos relacionados a la negociación pues instaló la cogeneradora en las facilidades de Weedco. Es un hecho fáctico que LEPR asintió tácitamente al acuerdo con Weedco toda vez que hizo las gestiones de comprar el equipo a LEUSA, quien a su vez lo compró mediante financiamiento de Maris, para que fuera instalado en las facilidades de Weedco. Es decir, no existe duda de que, en este caso, el negocio es un contrato válido entre las partes que tuvo consentimiento, objeto y causa.

El propósito del contrato fue instalar la cogeneradora en las instalaciones de Weedco para que la parte apelante pagara por la energía suplida. Weedco no tenía intenciones de comprar el equipo, tampoco LEPR tenía intenciones de venderle el equipo sino la generación de energía. Weedco estaba predispuesto a la compra de una cantidad mínima mensual de energía. Sin embargo, la cogeneradora no ha producido energía alguna desde su instalación.

Del expediente ante nuestra consideración surge que, Weedco se obligó mediante el contrato a la compra mensual mínima de 233.335 kWh de electricidad. Dado que Weedco solicitó mayor generación de energía, pero no estuvo dispuesto a pagar más dinero, las negociaciones entre las partes se paralizaron. No obstante, LEPR incumplió su obligación original de instalar un equipo que le supliera energía a Weedco. Incluso, surge del expediente que, el señor Veliz declaró bajo juramento, en la deposición, que Weedco nunca ha tenido que pagar por nada porque la cogeneradora no ha producido energía. Por lo que, contrario a lo resuelto por el foro primario, resolvemos que Weedco no viene obligado al pago de mensualidad mínima alguna, toda vez que la cogeneradora nunca ha producido energía y este fue el propósito del contrato. En consecuencia, dicha parte no ha incumplido con sus obligaciones bajo el ESA.

De otra parte, sujeto al ESA, LEPR era el dueño del "Conveyance System". Según dicho acuerdo, LEPR necesitaba el consentimiento escrito de Weedco para transferir la titularidad del equipo. Maris financió la compra del equipo que se instaló en las facilidades de Weedco. Empero, LEUSA no cumplió con el pago por lo que LEPR transfirió la titularidad del equipo a Maris. Sin embargo, no obtuvo el consentimiento escrito de Weedco según requerido por el contrato.

Sobre estas alegaciones, LEPR, al estar en rebeldía, renunció a levantar defensas afirmativas por lo que se toman como admitidas. LEPR fue debidamente emplazado y no compareció al pleito a presentar alegación responsiva. En este caso, determinamos que procede dictar sentencia en rebeldía en contra de LEPR y señalar una vista para la evaluación de los daños causados, si alguno.

Respecto al cuarto señalamiento de error, la evidencia sometida demuestra que entre Weedco y LEPR se formalizó un

contrato. Sin embargo, colegimos que, en este caso, no se cumple con los restantes elementos para establecer la causa de acción por interferencia torticera en relaciones contractuales. Es decir, no avistamos de los hechos que medio culpa o intención por parte de Maris y el señor Ortiz, quien ciertamente tenían conocimiento del contrato, al momento de reclamar la cogeneradora que financiaron. <u>Maris pactó con LEUSA</u> y LEUSA permitió que LEPR instalara el equipo en las facilidades de Weedco. Maris pretendía cobrar su acreencia. Por ello, entendemos que no hubo intención de interferir en el contrato ni se causó perjuicio alguno a la parte apelante. Si bien es cierto que, el señor Ortiz asistió a varias de las reuniones entre Weedco y LEPR, lo hizo como único dueño y presidente de Maris, pues fue dicha parte quien decidió prestarle el dinero a LEUSA para la compra del equipo, que eventualmente LEPR instalaría en Weedco.

Por lo cual, concluimos que no se cometió el error señalado. El TPI aplicó correctamente el derecho a la controversia y no procede la revocación o modificación de su dictamen, respecto a dicha causa de acción.

Respecto al quinto señalamiento de error, determinamos que el foro *a quo* no incurrió en error al determinar que la desestimación de la reconvención en el pleito de marras, debía ser sin perjuicio. Toda vez que dicha parte podrá reclamar oportunamente y **contra la parte procedente** lo que entiende que tiene derecho.

Respecto al sexto señalamiento de error, concluimos que el TPI erró al imponer honorarios de abogado por temeridad a una parte que no ha desplegado terquedad, obstinación, contumacia o insistencia en una actitud desprovista de fundamentos. En esta ocasión, la discreción del hermano foro primario no estuvo inexorablemente atada a la razonabilidad.

Maris reclama la entrega del equipo sobre el cual tiene la titularidad dado que no ha recibido pago por el mismo. Sin embargo, Weedco retuvo la cogeneradora que LEPR instaló en virtud del contrato entre las partes que debía suplirle energía. Así que, la parte apelante actuó de conformidad con el contrato que, inclusive, incluyó una cláusula que establecía que Weedco debía prestar su consentimiento escrito para la transferencia de titularidad del equipo. Entendemos que, no procede la imposición de honorarios por temeridad debido a que la actuación de la parte apelante no comprende conducta temeraria por entender que sufriría un daño real y solicitar un remedio conforme a derecho. No obstante, coincidimos en que corresponde que Weedco entregue el equipo dado que no tiene titularidad sobre él, a tenor con los documentos que obran en el expediente del caso.

Por todo lo anterior, se revoca la determinación del foro primario que declaró No Ha Lugar la *Demanda* respecto a la causa de acción por incumplimiento de contrato contra LEPR, parte en rebeldía.

Además, se revoca la determinación respecto a la imposición de honorarios de abogado por temeridad a favor de Maris.

**V.**

Por los fundamentos que anteceden, se revoca la sentencia recurrida del TPI únicamente en lo atinente a la desestimación de la reclamación contra LEPR, quien se encuentra en rebeldía y respecto a la imposición de honorarios de abogados por temeridad. El TPI deberá dictar la correspondiente sentencia parcial en rebeldía, en relación a dicha parte. Además, celebrará una vista evidenciaria para adjudicar los daños, si alguno, sufridos por la parte apelante.

Se confirma en los demás pronunciamientos. Se devuelve el caso para la continuación de los procedimientos, conforme lo aquí resuelto.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones. La Juez Lebrón Nieves concurre con el resultado sin opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones